# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KEVIN BURGER

    Plaintiff,

v.                                                           CASE NO:
                                                         HON:

DETROIT TRANSPORTATION CORP.,
BARBARA HANSEN, KRISTY CROSS,
WILLIAM HART, DERICK BELL, and
BRENDA WALKER

    Defendants.
_____/
CHRISTOPHER TRAINOR & ASSOCIATES
CHRISTOPHER J. TRAINOR (P42449)
AMY J. DEROUIN (P70514)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
(248) 698-3321 (fax)
amy.derouin@cjtrainor.com
_____/

There is no other current or pending civil action arising from the same transaction or occurrence which is the subject matter of this lawsuit

## **COMPLAINT AND JURY DEMAND**

1

**NOW COMES** Plaintiff, **KEVIN BURGER**, by and through his attorneys, CHRISTOPHER TRAINOR & ASSOCIATES, and for his Complaint against the above-named Defendants state as follows:

1. Plaintiff, KEVIN BURGER, is a resident of the City of Highland Township, County of Oakland, State of Michigan.

2. Defendant DETROIT TRANSPORTATION CORP. ("Defendant DTC") is a Michigan public corporation, pursuant to the provisions of Act 7 or the Public Acts of 1967, organized under the laws of Michigan, which conducts business in the City of Detroit, County of Wayne, State of Michigan.

3. Defendant BARBARA HANSEN is and/or was the General Manager of Defendant Detroit Transportation, and at all relevant times had been Plaintiff's supervisor with power and control over the terms and conditions of Plaintiff's employment with the authority to discipline including, but not limited to, suspend and/or terminate Plaintiff's employment on behalf of Defendant DTC.

4. Defendant KRISTY CROSS is and/or was the Field Operations Supervisor of Defendant Detroit Transportation, and at all relevant times had been Plaintiff's supervisor with power and control over the terms and conditions of Plaintiff's employment with the authority to discipline including, but not limited to, suspend and/or terminate Plaintiff's employment on behalf of Defendant DTC.

5. Defendant WILLIAM HART is and/or was the Deputy Chief of Police of Defendant Detroit Transportation, and at all relevant times had been Plaintiff's supervisor with power and control over the terms and conditions of Plaintiff's employment with the authority to discipline including, but not limited to, suspend and/or terminate Plaintiff's employment on behalf of Defendant DTC.

6. Defendant DERICK BELL is and/or was a Sergeant of Defendant Detroit Transportation, and at all relevant times had been Plaintiff's supervisor with power and control over the terms and conditions of Plaintiff's employment with the authority to discipline including, but not limited to, suspend and/or terminate Plaintiff's employment on behalf of Defendant DTC.

7. Defendant BRENDA WALKER is and/or was the Human Resources Manager of Defendant Detroit Transportation and at all relevant times had been Plaintiff's supervisor with power and control over the terms and conditions of Plaintiff's employment with the authority to discipline including, but not limited to, suspend and/or terminate Plaintiff's employment on behalf of Defendant DTC.

8. All relevant events giving rise to this lawsuit occurred in the City of Detroit, County of Wayne, State of Michigan.

9. Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1331 [federal question] and 29 USC § 2601, et seq. [FMLA].

10. That the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest, costs, and attorney fees.

## FACTS

11. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as through fully set forth herein.

12. That on April 17, 2016, Plaintiff accepted an hourly position as a Transit Police Officer with Defendant DTC, and he began his employment on May 2, 2016.

13. That Plaintiff provided Defendants with excellent work performance, continued service, and loyalty as reflected by positive performance evaluations as well as his receipt of a Commendation from the Chief of Police.

14. That on or about May 5, 2018, Plaintiff requested Family Medical Leave from Defendants pursuant to the Family Medical Leave Act in order to take care of his pregnant wife, who was expected to deliver on or about July 18, 2018 and had experienced complications during her previous pregnancy.

15. That on or about May 18, 2018, Plaintiff was provided with an Eligibility and Rights & Responsibility Notice which approved his request for intermittent Family Medical Leave effective on May 14, 2018 in order to care of his wife, when necessary, in anticipation of the birth of their child.

16. That on or about June 23, 2018, Plaintiff contacted Defendant DTC and used his intermittent FMLA as his wife was in the hospital for complications related to her pregnancy.

17. That Plaintiff contacted Defendant DTC and used his intermittent FMLA when his wife gave birth on July 14, 2018, in which such Leave was for a period of approximately 1 week.

18. That subsequent to Plaintiff's return to work, he was issued a negative Administrative Counseling Registry ("ACR") for unfounded attendance issues in which said ACR was signed by both Defendants BELL and CROSS.

19. That upon review of the ACR, Plaintiff learned that part of the alleged attendance issue was wrongly based upon his time that he utilized for FMLA.

20. That when Plaintiff explained to Defendant BELL that the ACR wrongfully penalized him as it was partially based upon FMLA leave and requested that if he provided proof of same could the ACR be withdrawn, he was told no.

21. That at approximately 8:14 p.m. on August 1, 2018, Plaintiff called Defendant HART, informed him of the ACR and that it wrongfully included FMLA time, and he was going to file a Complaint with the Department of Labor.

22. That in response, Defendant HART accused Plaintiff of threatening him and ended the conversation.

23. That approximately one hour later, Plaintiff was called in to meeting with Defendant BELL and Sgt. RUSS where he was instructed to turn in his badges and police identification, and he was sent home.

24. That on August 2, 2018, after Plaintiff filed a Complaint with the Department of Labor, he contacted Defendant BELL to inquire as to his employment status with Defendant DTC.  Plaintiff did not receive a response as to when he could return to work.

25. That on August 3, 2018, Plaintiff again contacted Defendant BELL to inquire about his employment status with Defendant DTC.  Plaintiff did not receive a response as to when he could return to work.

26. That on August 5, 2018, Plaintiff e-mailed Defendant WALKER to inquire as to his employment status with Defendant DTC.  Plaintiff received no response from Defendant WALKER.

27. That on August 7, 2018, Plaintiff received a letter, via Fed Ex mail, from Defendant WALKER dated August 2, 2018 which stated that Plaintiff was suspended without pay.

28. That on or about August 7, 2018, Plaintiff's wife received a notice from Defendant DTC regarding COBRA benefits, which implied that Plaintiff had been terminated from his employment at Defendant DTC.

29. That on August 21, 2018, Plaintiff received another letter from Defendant WALKER which informed him that he was indefinitely suspended without pay which, upon information and belief, said suspension was approved by Defendant HANSON.

30. That given that this indefinite suspension was unjustified and being done for no other reason than because Plaintiff had exercised his FMLA rights, Plaintiff was forced to resign from his position at Defendant DTC on August 27, 2018.

31. That as a direct and proximate result of Defendants' unlawful actions against Plaintiff, as described in this Complaint, he sustained injuries and damages including, but not limited to, the following:

    a. Loss of earnings, past, present, and future;

    b. Loss or earning capacity;

    c. Loss of career opportunities;

    d. Loss of fringe and pension benefits, past, present, and future;

    e. Mental and emotional distress;

  f.  Embarrassment and humiliation;

  g.  Loss of reputation and esteem among his friends, family, and in the community;

  h.  Loss of the ordinary pleasures of everyday life, including the opportunity to pursue comparable occupation of choice.

## **COUNT I – VIOLATION OF FAMILY AND MEDICAL LEAVE ACT, 29 USC § 2601, ET SEQ.**

32. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

33. At all times relevant to this Complaint, Plaintiff was employed by, and worked for, Defendant DTC.

34. Plaintiff was an eligible employee under the FMLA.

35. Defendant DTC is an employer under the FMLA.

36. Plaintiff was eligible to take a family/medical leave under the FMLA.

37. Plaintiff requested FMLA leave and was placed on FMLA leave status on or about May 14, 2018.

38. Plaintiff was disciplined, suspended indefinitely without pay, and forced to resign by Defendants for no other than reason than because he lawfully exercised his rights under FMLA.

39. As a direct and proximate result of Defendants' violation of the FMLA as described in this Complaint, Plaintiff sustained injuries and damages including, but not limited to:

   a. Loss of earnings, past, present and future;

   b. Loss of earning capacity;

   c. Loss of career opportunities;

   d. Loss of fringe benefits past, present and future;

   e. Mental and emotional distress;

   f. Embarrassment and humiliation;

   g. Loss of reputation and esteem among his friends, family and in the community; and

   h. Loss of the ordinary pleasures of everyday life, including the opportunity to pursue and obtain comparable occupation of choice

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) along with interest and costs, reasonable attorney fees, punitive and exemplary damages, for damages so wrongfully sustained, along with any other relief to which Plaintiff may be entitled in law and equity.

        Respectfully Submitted,

        CHRISTOPHER TRAINOR & ASSOCIATES

        BY: **/s/ Amy J. DeRouin**
        CHRISTOPHER J. TRAINOR (P42449)
        AMY J. DEROUIN (P70514)
        Attorneys for Plaintiff
        9750 Highland Road
        White Lake, MI  48386
        (248) 886-8650

Dated: January 20, 2020        amy.derouin@cjtrainor.com
*AJD/llw*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KEVIN BURGER

    Plaintiff,

v.                                          CASE NO:
                                              HON:

DETROIT TRANSPORTATION CORP.,
BARBARA HANSEN, KRISTY CROSS,
WILLIAM HART, DERICK BELL, and
BRENDA WALKER

    Defendants.
_____/
CHRISTOPHER TRAINOR & ASSOCIATES
CHRISTOPHER J. TRAINOR (P42449)
AMY J. DEROUIN (P70514)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
(248) 698-3321 (fax)
amy.derouin@cjtrainor.com
_____/

## **DEMAND FOR TRIAL BY JURY**

**NOW COMES** Plaintiff, **KEVIN BURGER**, by and through his attorneys, CHRISTOPHER TRAINOR & ASSOCIATES, and hereby makes a Demand for Trial by Jury in the above-captioned matter.

Respectfully Submitted,
CHRISTOPHER TRAINOR & ASSOCIATES

BY: **/s/ Amy J. DeRouin**
CHRISTOPHER J. TRAINOR (P42449)
AMY J. DEROUIN (P70514)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650

Dated:  January 20, 2020    amy.derouin@cjtrainor.com
*AJD/llw*